IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

**LAUREN M. MONTILLO,**

       **Petitioner,**

**v.**                                **Case No. 1:21-cv-00048**

**WARDEN REHERMAN,**

       **Respondent.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court are Petitioner Lauren M. Montillo's *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, (ECF No. 1), and Respondent's request that the petition be dismissed. (ECF No. 5). This matter is assigned to the Honorable David A. Faber, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Having thoroughly considered the record, the undersigned determines that Petitioner is clearly not entitled to relief; therefore, the undersigned **RECOMMENDS** that the § 2241 petition, (ECF No. 1), be **DENIED**; that Respondent's request for dismissal, (ECF No. 5), be **GRANTED**; and that this matter be **DISMISSED**, with prejudice, from the docket of the Court.

**I.**    **Factual and Procedural Background**

**A.**    *Proceedings in the Sentencing Court*

After pleading guilty to financial crimes, Petitioner Lauren M. Montillo

("Montillo") was sentenced to a total of 96 months' imprisonment by the United States District Court for the District of Maryland ("Sentencing Court"). *United States v. Montillo et al.*, No. 1:17-cr-00655-RDB-01 (D. Md. Apr. 16, 2019), ECF Nos. 96, 102. She unsuccessfully appealed her judgment to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"). *Id.*, ECF Nos. 104, 131, 132.

On June 17, 2020, Montillo moved for release to home confinement pursuant to the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), arguing that she qualified for relief and noting several ailments that made her susceptible to contracting COVID-19. *Id.*, ECF No. 139. The Government responded in opposition to the motion, and on December 14, 2020, the Sentencing Court denied it. *Id.*, ECF Nos. 140, 144. On December 29, 2020, Montillo filed a pro se motion for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), and later filed another such motion through counsel, raising her medical issues as reason for granting release. *Id.*, ECF Nos. 145, 158. The motions are currently pending in the Sentencing Court.

### B.    *Proceedings in this Court*

Montillo filed the instant petition under § 2241 in January 2021 while housed at Federal Prison Camp Alderson ("FPC Alderson") in Alderson, West Virginia.[1] (ECF No. 1). She challenges the "inadequate medical care" and "medication deprivation" she suffered by "Dr Dickenson," who, in a separate incident, "physically violated [her] body." (*Id.* at 2). She also challenges the denial of her requests for medical accommodations such as a "handicap shower pass, lumbar support for [her] mattress, & renewal of [her] lower bunk pass." (*Id.*). Montillo additionally requested long sleeve

---

[1] A few months into the pendency of this action, Montillo was transferred from FPC Alderson and according to the BOP Inmate Locator tool, she is currently housed at Federal Medical Center Lexington in Lexington, Kentucky. *See* BOP Inmate Locator Tool, https://www.bop.gov/inmateloc/.

shirts to conceal bleeding and shedding caused by plaque psoriasis. (*Id.* at 2–3). After her grievance was rejected, she appealed to the BOP's regional office, further explaining the necessity of the long sleeve shirts, an appeal which was also denied. (*Id.* at 3). She next appealed to the Central Office, adding an argument about destruction of her medical records and falsification of her medication records which interfered with her "consideration for Home Confinement under CARES Act." (*Id.*). She attaches her grievances and appeals. (ECF No. 1-1 at 1–12).

On February 3, 2021, Respondent filed a response to Montillo's petition. (ECF No. 5). Respondent notes that Montillo's challenges to the conditions of her confinement are not properly raised in a § 2241 petition. (*Id.* at 1–2). As to her arguments seeking relief pursuant to the CARES Act, Respondent maintains that Montillo is not entitled to relief. (*Id.* at 2). Respondent notes that as of January 28, 2021, Montillo had only completed 23.2% of her sentence, and the BOP has limited its review of CARES Act home confinement to prisoners who have served at least 50% of their sentence, or have 18 months or less remaining after serving at least 25%. (*Id.* at 4). Respondent asserts that the Court has limited authority to review the BOP's decision to place prisoners in home confinement and Montillo is not entitled to relief under the circumstances. (*Id.* at 5). Respondent concludes that the petition should be dismissed. (*Id.* at 6).

On June 1, 2021, Montillo filed her reply. (ECF No. 11). She contends that she is especially vulnerable to the effects of COVID-19 because she is prescribed a chemotherapy drug, has multiple autoimmune disorders, takes other immunosuppressant drugs, is obese, and has a long history of smoking and chronic respiratory infections. (*Id.* at 1–2). She recounted how, despite her doctor's

3

instructions that she continue treatment with a biologic medication and provision of a prescription renewal to FPC Alderson's medical staff, she was not given the same medication in prison. (*Id.* at 2–3). As a result, she experienced a recurrence of her autoimmune conditions after 14 years of remission, and painful plaques and lesions formed on 75% of her body. (*Id.* at 2–3). She suffered ridicule and difficulty showering, and her pain was worsened by the fabric of her prison clothing and the detergent used. (*Id.* at 3). She claims that the FPC Alderson failed to investigate two reports she made under the Prison Rape Elimination Act ("PREA"), and "an unethical Dr Wright" provided false information about Montillo's medical history, which prevented proper review of her request for relief under the CARES Act, and he destroyed some of her medical documents. (*Id.* at 4–5). She asserts that no doctor at the facility "can be trusted to evaluate [her] properly for COVID-19 Risk Factors." (*Id.* at 5). She claims that her CARES Act request was denied because of an "invalid time factor" created by the BOP that excluded vulnerable prisoners from evaluation. (*Id.* at 6–7). She stresses that the BOP's efforts to protect inmates from COVID-19 have been limited and the risk of contracting the disease is severe. (*Id.* at 8–10).

      Montillo denies that she is challenging the "conditions of confinement," insisting that masks, social distancing, clean hands, and freedom from disease exposure by staff are not conditions but are "basic standards and requirements determined by the CDC guidelines." (*Id.* at 10). She maintains that the Court should "enforce the BOP to follow the laws to save lives." (*Id.* at 11). She reiterates that she is eligible for home confinement, citing guidance from the Attorney General to the BOP indicating that qualified inmates should be moved to home confinement. (*Id.* at 12–14). Because the CARES Act "suspended all limitations on the length of time an inmate

4

may be placed on home confinement," the BOP lacked the authority to evaluate prisoners for that option based on the percentage of time served in their sentence and the determination is limited to only certain factors. (*Id.* at 14–17). She contends that the BOP is noncompliant with its obligation because it is prioritizing its review of prisoner eligibility for home confinement based on the impermissible time-served factor. (*Id.* at 18–22). She asks that she be "placed on home confinement" or, alternatively, seeks a court order requiring the BOP to place her on home confinement "until they complete a fair evaluation using the proper criteria and in a timely manner." (*Id.* at 23–24).

## II. <u>Standard of Review</u>

Respondent does not identify the standard under which he seeks dismissal of Montillo's petition; however, Respondent filed the response concurrently with the request for dismissal. Therefore, the request should be treated as a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *See Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009). A motion for judgment on the pleadings applies the same standard of review as a motion to dismiss filed under Rule 12(b)(6), and both motions may be filed in habeas actions. (*Id.* at 138–39); *see also Martin v. U.S. Parole Comm'n*, No. cv PWG-17-3335, 2018 WL 2135009, at *1 (D. Md. May 9, 2018).

When deciding a motion for judgment on the pleadings, the court must accept all well-pleaded allegations of the petition as true and "draw all reasonable factual inferences" in favor of the petitioner. *See Massey v. Ojaniit*, 759 F.3d 343, 353 (4th Cir. 2014); *Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009). Nonetheless, the court is "not obliged to accept allegations that 'represent unwarranted inferences,

5

unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" *Massey*, 759 F.3d at 353 (quoting *Blankenship v. Manchin*, 471 F.3d 523, 529 (4th Cir. 2006)). A court presented with a motion for judgment on the pleadings in a federal habeas case must consider "the face of the petition and any attached exhibits." *Walker*, 589 F.3d at 139 (quoting *Wolfe*, 565 F.3d at 169) (internal markings omitted). In addition, the court may consider "matters of public record," including documents from prior or pending court proceedings, when resolving the motion without converting it into a motion for summary judgment. (*Id.*) The court "may also consider documents attached to the complaint … as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

### III. Discussion

Montillo argues that this Court should order her release to home confinement, in part, because her medical care in prison is inadequate and leaves her vulnerable to COVID-19. (ECF Nos 1 at 2–3). She further argues that the BOP's reliance on an impermissible factor in evaluating prisoners for release under the CARES Act is preventing her from being properly evaluated for release and that under a correct construction of the CARES Act, she is entitled to release or at least assessment for release to home confinement. (ECF No. 11 at 18–22). For the reasons discussed below, Montillo's request for release to home confinement is not properly before this Court. Her challenges to the conditions of her confinement and statutory construction argument are discussed separately.

#### A. *Request for Release Under the First Step Act*

In her initial petition, Montillo did not clearly provide her preferred relief but

in her reply she asks that she be placed on home confinement or, alternatively, placed on home confinement until the BOP properly evaluates her for home confinement. (ECF No. 11 at 23–24). Section 2241 confers "broad authority" on the court to "hear applications for writs of habeas corpus filed by persons claiming to be held 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Timms v. Johns*, 627 F.3d 525, 530 (4th Cir. 2010) (quoting 28 U.S.C. § 2241). "[H]abeas corpus is an attack by a person in custody upon the legality of that custody, and [] the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

Here, Montillo is not challenging the legality of her custody by attacking the validity of her convictions or sentence, or suggesting that the BOP has erred in calculating her release date; rather, she contends that she should be granted release from prison because of dangerous conditions at FPC Alderson due to COVID-19 and her own personal susceptibility to that disease, as well as the applicability of other factors as described by the Attorney General in communication with the BOP. Such a claim is not cognizable in a § 2241 habeas petition. Instead, as Montillo is seeking release based on the threat posed to her by COVID-19, her request is more properly construed as a petition for compassionate release under the First Step Act. *See Seth v. McDonough,* No. 8:20-CV-01028-PX, 2020 WL 2571168, at *8 (D. Md. May 21, 2020) (concluding that challenges based on possible exposure to COVID-19 could not be brought in § 2241 because they were not challenges to the "fact or duration of confinement"); *see also McCarson v. Reherman*, No. 2:20-01386-HMH-MGB, 2020 WL 2110770, at *2 (D.S.C. May 4, 2020) (finding that request for release under CARES Act not appropriate in a § 2241 petition and instead construing as request for

7

compassionate release and transferring to sentencing court).

"Generally, a court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Wirsing*, 943 F.3d 175, 179 (4th Cir. 2019) (quoting 18 U.S.C. § 3582(c)). An exception to this general rule is provided by the compassionate release provision of the First Step Act ("FSA"). *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The FSA provides that a district court "may reduce the term of imprisonment" when certain circumstances are met. 18 U.S.C. § 3582(c)(1)(A). Nevertheless, Montillo's request cannot be examined by this Court. Although Montillo was incarcerated in the Southern District of West Virginia at the time she filed her petition, compassionate release under § 3582 can only be granted by the court that sentenced her. *See Hill v. Streeval*, No. 7:20-CV-00309, 2020 WL 3065310, at *3 (W.D. Va. June 9, 2020) ("Whether brought under § 3582 or the First Step Act, motions in which a convicted prisoner requests a reduction in his sentence are filed with the *sentencing* court, not with the court in the district where he is incarcerated."); *Hardin v. Acting Warden F.C.I. Edgefield*, No. CV 9:20-1420-SAL-BM, 2020 WL 3259761, at *4 (D.S.C. May 6, 2020), *report and recommendation adopted*, No. 9:20CV1420-HMH-BM, 2020 WL 3259308 (D.S.C. June 16, 2020) (holding that the petitioner's request he be released due to COVID-19 concerns should be filed as a request for compassionate release in the sentencing court).

Montillo has already filed a similar request in the Sentencing Court under the aegis of a request for compassionate release. *Montillo*, No. 1:17-cr-00655-RDB-01, ECF Nos. 145, 158. The matter is currently before the Sentencing Court, where Montillo is represented by counsel, and the parties are actively litigating the issue. Clearly, this avenue is indeed an appropriate and available means for Montillo to raise the claims

she makes in this § 2241 petition. Accordingly, the undersigned **FINDS** that Montillo's request for early release from custody due to the risk presented by COVID-19 is not cognizable here and should be dismissed. Furthermore, the undersigned **FINDS** that Montillo properly raised the issue with the Sentencing Court and is currently seeking a ruling, and thus cannot obtain relief here.

### B. *Inadequate Medical Care and COVID-19 Safety Measures*

Montillo alleges that the medical care she has received for her serious ailments and the COVID-19 safety measures in place at the prison are inadequate. To repeat, in order to state a claim under § 2241, a petitioner must show that she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). To determine whether a claim is cognizable under habeas corpus or under a civil rights action, a court must review whether the challenge is either to the fact or duration of the prisoner's confinement or instead to the conditions of the prisoner's confinement. *See Rodriguez v. Ratledge*, 715 F. App'x 261, 266 (4th Cir. 2017). While a habeas petition is appropriate when a prisoner seeks a "quantum change" in his level of custody, when he only "seeks a different program, location, or environment, his challenge is to the conditions of his confinement rather than the fact of his confinement and his remedy is under civil rights law." *Sappleton v. Hogsten*, Civil Action No. 1:11–00552, 2014 WL 2565547, at *2 (S.D.W. Va. Jun. 6, 2014) (quoting *Campbell v. Deboo*, 2011 WL 1694454, at *2 (N.D.W. Va. May 4, 2011)).

Respondent argues in response that Montillo cannot raise claims about the conditions of her confinement in a § 2241 petition. (ECF No. 5 at 1–2). Montillo attempts to sidestep this argument in her reply, insisting that the environment she is subject to cannot be considered "conditions" because COVID-19 safety measures are

9

standards set forth by the CDC. (ECF No. 11 at 10–11). However, in so doing, Montillo misunderstands the use of the phrase "conditions of confinement" in this context. Challenges to the quality of medical care and safety are considered challenges to the conditions in which prisoners are housed, which must comply with the Eighth Amendment's prohibition against cruel and unusual punishments. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Montillo makes reference to the Eighth Amendment in her initial petition, explaining that she raised the issue to the Central Office when she sought review of the prison's failure to provide her with an essential medication. (ECF No. 1 at 3).

Eighth Amendment challenges to the conditions of confinement are not properly addressed through habeas petitions and instead should be challenged in civil rights actions. *See Wilborn v. Mansukhani,* 795 F. App'x 157, 164 (4th Cir. 2019) (holding that § 2241 petitions are not appropriate avenue to raise conditions of confinement claims); *see also Hallinan v. Scarantino*, 466 F. Supp. 3d 587, 601 (E.D.N.C. 2020) (collecting cases); *Roudabush v. Warden FCI Edgefield*, No. CV 8:18-1818-BHH-JDA, 2018 WL 3979858, at \*1 (D.S.C. July 18, 2018*), report and recommendation adopted*, No. CV 8:18-1818-BHH, 2018 WL 3972257 (D.S.C. Aug. 20, 2018) (challenge alleging harassment, unsanitary food, and lack of mental health care not properly raised by § 2241 claim); *Crooker v. Stewart*, No. CIV.A. ELH-14-1972, 2015 WL 1210209, at \*3 (D. Md. Mar. 13, 2015) (alleged Eighth Amendment violations should be addressed by *Bivens* or §1983 action, not a § 2241 claim); *Toure v. Hott*, No. 1:20-CV-395, 2020 WL 2092639, at \*5 (E.D. Va. Apr. 29, 2020) (claim alleging Eighth Amendment violations in light of COVID-19 pandemic not cognizable in § 2241 petition); *Badea v. Cox*, 931 F.2d 573, 574 (9th Cir.1991) ("Habeas corpus proceedings

are the proper mechanism for a prisoner to challenge the 'legality or duration' of confinement…. A civil rights action, in contrast, is the proper method for challenging 'conditions of confinement'"). Thus, because Montillo's claims challenge the conditions of her confinement, and not the duration or fact of her sentence, the undersigned **FINDS** that these claims should be dismissed as they are not cognizable under § 2241.

Furthermore, because Montillo has since been transferred to a different facility, any challenge to the conditions of confinement she may have made while housed at FPC Alderson is moot. *Ajaj v. Smith*, 108 F. App'x 743, 744 (4th Cir. 2004); *see also Canterbury v. King*, No. 2:19-CV-00586, 2021 WL 5137920, at *2 (S.D.W. Va. Nov. 2, 2021). Thus, even if Montillo were able to raise a challenge to the conditions of her confinement in this action, the undersigned **FINDS** that such a claim would necessarily be dismissed.

### C. *Factors Used to Determine Home Confinement Eligibility*

Montillo argues that the BOP is acting in violation of the CARES Act by prioritizing home confinement review for inmates who have already served 50% of their sentence or 25% with less than 18 months remaining, thus preventing her proper evaluation for release. (ECF No. 11 at 12–23). According to Montillo, the purpose of the CARES Act is to reduce the prison population and provide space for social distancing, and the BOP's requirement regarding time-served makes it impossible to carry out Congress's and the Attorney General's objectives. (*Id.* at 13). She asks the Court to order the BOP to review her eligibility under the specific factors outlined by the Attorney General in his March 26 memorandum and disregard the percentage of her sentence she has served. (*Id.* at 24.).

Respondent correctly notes that the CARES Act does not limit the BOP's

11

discretion to determine whether an inmate is transferred to home confinement, but in fact expands the class of inmates who may be eligible for such transfer. (ECF No. 5 at 3). The CARES Act provides that "the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" during the period for which the Attorney General has found that emergency conditions affect BOP operations. Pub. L. No. 116-136, § 12003(b)(2). When the emergency period is not in effect, the BOP's discretion is limited by 18 U.S.C. 3624(c)(2), which only allows the BOP to place lower-risk inmates in home confinement for "the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." In its discretion, the BOP chose to widen the pool of eligible inmates by opening review to those who would not be eligible under the text of § 3624, namely, those who have served less than 90% of their sentence and have more than 6 months remaining. This is plainly an exercise of the additional leeway granted to the BOP in the CARES Act.

Furthermore, the BOP's filling of the statutory gap left to its discretion is "reasonable in light of the legislature's revealed design." *Lopez v. Davis*, 531 U.S. 230, 242 (2001) (citations omitted) (holding that a regulation categorically excluding certain inmates for consideration for early release is permissible). Reliance on the percentage of a sentence served in order to prioritize review is not an abuse of discretion. Congress took such an approach in granting the BOP authority under § 3624(c)(2), and it is rational to look to the statutory scheme for guidance in determining where to begin review of inmates newly eligible under the CARES Act. Therefore, the BOP's use of time served to prioritize reviewing inmates for release to home confinement is permissible.

Montillo relies on the March 26 memorandum from the Attorney General to the BOP, apparently believing that the list of factors the Attorney General provided is the exhaustive list of factors the BOP may consider when determining whether a particular prisoner should be placed on home confinement. (ECF No. 11 at 15). The memorandum advised the BOP to prioritize its use of home confinement and provided general guidance and a list of factors for the BOP to consider when assessing an inmate's discretionary release. (ECF No. 5 at 2–4). Section 12003(b)(2) of the CARES Act gives the Attorney General authority to make an emergency finding, which triggers a relaxation of the prerequisites for an inmate to be considered for home confinement under § 3624(c)(2). However, the CARES Act does not provide the Attorney General with any additional authority over the BOP's discretionary power to utilize home confinement in carrying out its duties. The Attorney General may express the wishes of the executive branch, or provide direction as to its policies, but the CARES Act does not shift authority away from the Director of the BOP to determine whether to transfer an inmate. In fact, the BOP has no obligation to consider *any* inmate for home confinement, because the statute provides that the BOP's authority under § 3624 "*may be used to place a prisoner in home confinement.*" No other provision directs the BOP to employ its discretion in a particular way, and the Attorney General does not bind the BOP to any course of action.

Furthermore, the memorandum itself neither states nor implies that the list of factors it sets forth should be the exclusive criteria for assessing an inmate's suitability for home confinement; in fact, the Attorney General specifically designates the list as "non-exhaustive." (ECF 5-1 at 4). A list such as this which leaves ample room for the exercise of discretion cannot form the basis for the relief Montillo seeks. *See Lytle v.*

*Hudgins*, No. 3:20-CV-134, 2021 WL 2644297, at *3 (N.D.W. Va. June 28, 2021) (noting that the March 26 memorandum "did not create judicial authority to grant home confinement") (internal citations and quotation marks omitted); *Berry v. Reherman*, No. CV 1:20-00294, 2020 WL 8575207, at *4 (S.D.W. Va. Oct. 16, 2020), *report and recommendation adopted*, No. CV 1:20-00294, 2021 WL 626997 (S.D.W. Va. Feb. 17, 2021) (collecting cases); *Buckman v. Reherman*, No. CV 1:20-00277, 2021 WL 1168697, at *4 (S.D.W. Va. Mar. 26, 2021). Because the BOP's implementation of its statutory authority pursuant to the CARES Act is permissible, the undersigned **FINDS** that Montillo is not entitled to court-ordered transfer to home confinement.

### IV. Proposal and Recommendations

For the aforementioned reasons, the undersigned respectfully **PROPOSES that** the § 2241 petition, (ECF No. 1), be **DENIED**; that Respondent's request for dismissal, (ECF No. 5), be **GRANTED**; and that this matter be **DISMISSED**, with prejudice, from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Petitioner shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Faber, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Petitioner and counsel of record.

**FILED:** February 11, 2022

_____
Cheryl A. Eifert
United States Magistrate Judge